LOTTINGER, Judge.
This matter originated as an action in jactitation which was filed by the plaintiffs on May 6, 1959. Testimony was taken and evidence adduced on the trial of an exception of want of possession on June 20 and 21, 1960 and on February 27 and 28, 1961. Judgment was rendered overruling the exception following which the defendant filed an answer in the nature of a general denial. The case was tried on its merits on April 18, 1964, at which time there was introduced into evidence the instrument con *359 stituting the alleged slander of title and judgment was rendered on April 10, 1964, in favor of the plaintiffs as prayed for from which judgment the defendant has appealed.
In his written reasons with respect to the exception of want of possession, the Trial Judge found as follows:
“This matter involves a jactatory or slander of title proceeding brought by the plaintiffs against the defendant. The record shows that the plaintiffs are the heirs of the late Desire La-graize who in 1895 acquired among other properties the following described property, to-wit:
“W i/á of the NE i/4 and the NW y4 of the SE y4 and the SE y4 of SE y4 Section 10, Township 21 South, Range 22 East in the Southeastern .Land District of Louisiana West of the Mississippi River.
“Plaintiffs further allege that they have been in open, actual and physical possession of said property for many years and that on December 30, 1953, the defendant slandered their title by placing of record in the conveyance records of this parish an affidavit claiming ownership to the property hereinabove described.
“To plaintiff’s petition defendant filed, by original and supplemental pleadings, on exception of no right of action on the grounds that plaintiffs lacked the necessary possession in order to institute this type of proceeding.
“It is therefore obvious that the sole question presented by this exception is whether or not plaintiffs had the necessary possession in order to institute this proceeding.
“Before discussing the various acts of possession advanced by the respective parties it is first necessary to determine what acts or actions were necessary to constitute the necessary possession as it is well established in the jurisprudence of this state that the nature and/or character of the land determines what acts or actions affecting lands are necessary to constitute possession. The record shows that the subject property is marsh or swamp land and that over the past years the best or sole use to which it could be put was for the purpose of trapping furbearing animals. The record also shows that in later years, due to oil development in this parish, the property was also susceptible to the granting of mineral leases * * *
“With the above in mind the Court has examined the various documents and testimony given in this case which reveals the following. In order to prove the necessary possession to bring this action plaintiffs have introduced tax receipts showing the payment of taxes on the subject property since its acquisition by Lagraize. They have also introduced various trapping leases which were granted on the subject property as far back as the year 1929. They have also introduced copies of various mineral leases granted on the subject property. They have also introduced the testimony of various witnesses touching on the possession exercised by the plaintiffs over the subject property for the past years.
“The Court, after examining the testimony of the various witnesses as well as the above mentioned documents, is of the opinion that plaintiffs have exercised the necessary possession in order to bring this action. This is based on the fact that because of the character and nature of this marsh land the main or sole actions to constitute possession was trapping and the record shows that since approximately the year 1929 plaintiffs and their ancestor, Desire Lagraize, have executed trap *360 ping leases affecting these lands and that these lands were actually trapped by the lessees and/or sublesses. There is also the testimony of John Plaisance and his two sons, Alec Plaisance and Lester Plaisance, who over the period of years were extensively engaged in the leasing and subleasing of lands in the immediate area for trapping purposes. These three witnesses testified that they were familiar with the location of the subject property and that during the years 1946, 1947 and 1948 they had obtained leases from the Lagraizes to trap the Lagraize lands in this area and that these leases included the subject property. They further testified that over the period of these years they placed trappers on the subject property for the purpose of trapping and know that these trappers actually trapped the subject property because of the furs that they picked up from them. In fact, one of the trappers assigned to the subject property was Leander Griffin who is a son of the plaintiff, (sic)
“In an effort to show lack of possession of the subject property by the plaintiffs the defendant offered the testimony of himself and numerous other witnesses. The defendant testified that he had been in possession of and trapped the subject property for many years and had never been disturbed in his possession by the plaintiffs or anyone else. However, this is entirely contrary to the testimony of both Alec and Lester Plaisance who testified that during the time they held the trapping lease they gave a sublease to trap the subject land to Leander Griffin, the son of plaintiff, (sic) and that this was signed in the presence of the defendant at his home and that Leander Griffin did trap the subject property as well as other property of the plaintiffs in the immediate area.
“After analyzing the testimony of the defendant the Court is of the opinion that Mr. Griffin never intended to take actual physical possession of the subject property and to hold same as his own. This is apparent from his testimony at page 254 et seq of the transcript where he was very evasive as to when he claimed to own this property and also at Tr. page 257 where he admitted that he had doubts as to the depth of his property and again at Tr. page 270 he admitted that he had previously claimed thirty arpents back from the Bayou but that when Louisiana Land & Exploration drew a new line in 1955 he backed up to eighteen arpents and further admitted that had the Louisiana Land & Exploration line been drawn at the ten arpent line he would have backed up to there. From the testimony of Mr. Griffin as quoted the Court is convinced he has never seriously intended to claim the subject property until recently nor has he been in actual physical possession of the subject property but on the contrary has merely passed over the subject property to hunt in the rear and to reach the Louisiana Land & Exploration land during the time when he was trapping same.
“Defendant further offered the testimony of several witnesses to the effect that they had hunted on the subject property as well as the surrounding properties for many years and the substance of the testimony of most of these witnesses on this point is that they paid the defendant between 15^ and 25 ‡ whenever they went hunting. The record shows that the defendant’s property fronts on Bayou Lafourche and that the subject property is located between the property of the defendant and the property of Louisiana Land & Exploration. The record further shows that many years ago .the defendant dug a tranaisse which started along the front of Bayou Lafourche and went to the rear to various ponds or bays. After analyzing the testimony *361 of these various witnesses as to their hunting on this property as well as the surrounding lands the Court is of the opinion that these persons were actually paying the defendant for the right to use the tranaisse to get to the ponds in the rear rather than paying for the right to hunt on his property. This is borne out by the fact that these witnesses testified that they hunted not only on the subject property but on the surrounding lands and that they paid no one for the right to hunt on the surrounding lands. It appears to the Court that in this particular area there were two tranaisses for ingress and egress to the ponds in the rear. One was the Joe Griffin tranaisse and the other was the Grey tranaisse and in order to reach the rear it was necessary to travel over these lands in order to reach the rear lands from Bayou Lafourche. For instance, there is the testimony of Mr. Picciola that when he used the Griffin Canal to go hunting in the rear he paid Mr. Griffin and when he used the Grey Canal to go hunting in the rear he paid Mr. Grey.
“For the reasons assigned:
“IT IS ORDERED, ADJUDGED AND DECREED that the exception of no right of action or want of possession filed by the defendant be and the same is hereby overruled.”
In brief and oral argument before this Court, three points are urged by appellant. The first of these is that the judgment was improperly rendered because no default was entered against a co-defendant, The Honorable Ambroise Landry, Clerk of the Lower Court. This argument is completely without merit for the record reflects that Landry, who is obviously only a nominal defendant, filed an answer in this matter on November 18, 1959, thus squarely putting the matter at issue as to him.
The second point urged by appellant is that when the case was tried on its merits the evidence with regard to plaintiff’s possession was not reintroduced. This evidence, both documentary and oral, was already in the record, formed a part of same and was properly considered by the Court. The reintroduction of same would clearly have been a useless gesture and was completely unnecessary.
Lastly, appellant contends that the Trial Judge erred in holding that the plaintiffs had possession. This is, of course, a factual issue and a careful study of the record shows that the findings of the Trial Judge were completely justified.
The final judgment of the Lower Court recognized the possession of the property hereinafter described to be in the plaintiffs and ordered that the affidavit of Joseph M. Griffin, dated July 20, 1953 and filed in evidence as P-29 and registered under Entry #117396, in C.B. 176, folio 313 of the records of Lafourche Parish, Louisiana be ordered erased and cancelled by the Clerk of Court of said Parish and further ordered the defendant Joseph M. Griffin to institute suit against the plaintiffs herein to assert his adverse claim of ownership of the property within 60 days after the judgment becomes final or to be precluded thereafter forever from asserting the ownership thereof.
A more minute description of said property is described in said judgment as follows :
“A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche at about sixty miles below the Town of Thibodaux and situated in the rear or East of Lot One (1) of Section Ten (10) of Township 21 South, Range 22 East, of the Southeastern Land District of Louisiana and having a front along the rear or East *362 ern line of Lot One (1) of the aforesaid Section Ten (10) of four and three-quarters (4)4) arpents, more or less; hounded on the North along the common section line between Sections Three (3) and Ten (10), hounded on the East by property of The Louisiana Land & Exploration Company, bounded on tile South by property of Jules Lapene, now or formerly, and bounded on the West by property of Joseph M. Griffin, now or formerly, forming part of the West Half (W-Vi) of the Northeast Quarter (NE-}4), and the Northwest Quarter (NW-54) of the Southeast Quarter (SE-}4) and the Southeast Quarter (SE-J4) of the Southeast Quarter (SE-J4) of Section Ten (10), Township 21 South, Range 22 East, in the Southeastern Land District of Louisiana West of the Mississippi River.”
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.